UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **UNIVERSAL PROPERTIES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 3:11-cv-538** |
| v. ) | **(Phillips)** |
| ) | |
| **REGIONS BANK,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

**I.   Introduction**

This matter comes before the Court concerning Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted [Doc. 6], Plaintiff's Motion for Summary Judgment [Doc. 11.] and Defendant's Motion for Rule 56(d) Discovery. [Doc. 16.]

**II.  Jurisdiction**

This action arose in Chancery Court for Knox County, Tennessee but has since been properly removed to this Court pursuant to 28 U.S.C. 1441(a) and 1446, *et seq.* The Court notes that it has jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1332 as there is complete diversity of the parties and the parties agree that the amount in controversy exceeds $75,000.

**III.    Statement of the Facts**

For the purposes of the present Motion the Court will state the relevant facts from the Complaint [Doc.1.] and Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment. [Doc. 16.] The present action arises from a contract dispute. First American National Bank ("FANB"), Regions Bank's ("Regions") predecessor in interest, entered into a contract with Universal Properties Inc. for the purchase of the First American Center Building located at 507 South Gay Street, Knoxville, Tennessee. The contract also contained an option, referred to as "An Option to Purchase Real Property and Sublease or Assume Lease" ("the Option"). The Option gave Universal the authority to exercise various rights, including rights to purchase, lease, or sublet a parking lot located on Union Avenue ("the Lot").

On August 5, 2011, Universal attempted to exercise The Option by contacting Regions, by letter, expressing its intent to purchase the Lot; Regions did not respond. Universal then sent two letters from counsel, one of which threatened legal action. Regions then responded to Universal's letter on October 7, 2011; Regions rebutted, via counsel, that "…we do not believe that [Universal] has a basis for judicial enforcement relation to the Option…" [Doc. 16 Exb D.]

The Option provision that is the subject of the dispute is as follows:

> Upon exercise of the Option, FANB agrees to sell the Owned Property and either sublet the Leased Property or permit Conley to assume the Parking Lot Lease in accordance with the terms of the Parking Lot Lease and this Option , for a purchase price which represents the fair market value of the Owned Property, as mutually agreed upon by the parties or as based upon and MAI appraisal, conducted by an appraiser chosen by both parties.

[Doc. 1 Exb 2.]

## V. Summary Judgment Analysis

Plaintiff requests the Court grant summary judgment asserting that "as no genuine issue of material fact exists, Universal is entitled to judgment as a matter of law." [Doc. 12 at 1.] Plaintiff contends that the Defendant violated the terms of the Option by refusing to participate in the price-setting mechanism for purchase, lease, or assignment of the Lot—excerpted in relevant part above. Plaintiff argues that the Option is enforceable and "Regions has not offered and cannot show any proper basis for its refusal to comply with its obligations under the Option Agreement…[a]s a result of Regions' failure to comply with its contractual obligations, Universal is entitled to Summary Judgment as a matter of law." [Doc. 12 at 14.] The Defendant argues that Summary Judgment should not be granted as the contract is an unenforceable agreement to agree.

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of production. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In evaluating a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The central issue is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Palmer v. Cacioppo*, 429 Fed. App'x 491, 495 (6th Cir. 2011) (quoting *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)).

Here, as the Plaintiff filed the Motion for Summary Judgment, the Court will construe all reasonable inferences in favor of the Defendant; furthermore, the Plaintiff will need to prove that there are no genuine issues of material fact and that the Plaintiff is entitled to judgment as a matter of law. *Id.* The Defendant's argument in chief is that the Plaintiff should not prevail on its Motion as the contract is unenforceably vague.

### 1. Overview of Vagueness at the Summary Judgment Stage

At the summary judgment stage, the Court is "not concerned . . . with whether or not a contract, in fact, exists between the parties, but rather with whether or not reasonable minds could differ on that question." *Gurley v. King*, 183 S.W.3d 30, 42 (Tenn. Ct. App. 2005). Under Tennessee law, contract price must be "sufficiently definite to be enforced." *Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.,* 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002). An agreement to agree to something in the future is not generally enforceable. *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 486 (Tenn. Ct. App. 2005) "A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Ziyad v. Estate of Tanner*, 2008 Tenn. App. LEXIS 682, 2008 WL 4830872, at *6 (Tenn. Ct. App. Nov. 6, 2008) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn.

2001)). The terms of the contract are sufficiently definite if they provide a basis for determining whether a breach has occurred and for giving an appropriate remedy. *Id*. (citing *Doe*, 46 S.W.3d at 196).

Under Tennessee law, "[i]n order for a contract to be binding it must spell out the obligation of the parties with sufficient definiteness that it can be performed. All the essential terms of a contract must be finally and definitely settled. None must be left to determination, by future negotiations." *United Am. Bank of Memphis v. Walker*, 1986 WL 11250, *2 (Tenn. Ct. App. Oct. 10, 1986); *see also Adv. Concrete Tools, Inc. v. Beach*, 2012 WL 1565519, *8 (M.D. Tenn. May 2, 2012) ("[E]ssential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing."); *German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009) ("Courts will not enforce a contract that is vague or indefinite or missing essential terms, and will not make a new contract for the parties) (citing *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 487 (2005)).

### 2. Arguments

#### i. Alleged Vagueness and Enforceability of the Option

The contract language at issue reads:

> Upon exercise of the Option, FANB agrees to sell the Owned Property and either sublet the Leased Property or permit Conley to assume the Parking Lot Lease in accordance with the terms of the parking Lot Lease and this Option, for a purchase price which represents the fair market value of the Owned Property, as mutually agreed upon by the parties or as based upon an MAI appraisal, conducted by an appraiser chosen by the parties.

[Doc. 1 Exb 2.] The Defendant correctly notes that the threshold issue is the enforceability of the contract. Defendant asserts that the Court ought to consider "whether the language of the option

-5-

itself merely constitutes an 'agreement to agree.'" [Doc. 16 at 2.] The Plaintiff argues that the contract is enforceable and sufficiently explicit, arguing that the insertion of the clause "as mutually agreed upon by the parties or based upon an MAI appraisal," provides sufficient clarity and direction to the parties as to the price of the Lot and the method of valuation; the Plaintiff argues, in other words, that the Option is not fatally vague since it creates "sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Doe,* 46 S.W.3d at 196.

The analysis before the Court is whether the Option illustrates a manifest intent to be bound, absent specific price terms, with sufficient specificity that the contract is not merely a vague "agreement to agree" but an enforceable contract. Even more narrowly, does the absence of a set price term render the contract *per se* invalid; and if not, then, as applied to this contract, is the valuation method specific enough to express an intent to be bound, thus giving rise to an obligation, or, is the contract fatally vague. Three discrete questions can be distilled: 1)Does the absence of a set price term render the contract *per se* unenforceable; 2) If not, what sort of valuation method have courts generally accepted as an enforceable alternative to a specific price term; and, 3) Does the Option language conform to a lawfully enforceable standard? The Court will now consider those questions below.

### i. Absence of a Set Price

The first question concerning the Option's enforceability is disposed of easily; the absence of a specific price terms is not determinative of contract enforceability. It is true that, under Tennessee law, contract price must be "sufficiently definite to be enforced." *Klosterman,* 102 S.W.3d at 635; however, specificity can be satisfied by numerous methods of valuation so

-6-

long as they are "of such a definite nature as to be enforceable." Huber v. Calloway, No. M2005-00897-COA-R3-CV, 2007 WL 2089753 at *1 (Tenn. Ct. App. July 12, 2007). Accordingly, the Court finds that the absence of a price term in the Option is not fatal and does not, by itself, render the Option unenforceable as a matter of law.

### ii.  Acceptable Methods of Valuation

The Tennessee Supreme Court has explained that "[a] contract 'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.'" *Jane Doe, et al. v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citing *Higgins v. Oil, Clem. & Atomic Workers Int'l Union*, 811 S.W.2d 875, 880 (Tenn. 1991) (quoting *Soar v. National Football League Players' Ass'n*, 550 F.2d 1287, 1290 (1st Cir.1977))). "'The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id.* (quoting Restatement (Second) of Contracts § 33(2) (1981)).

To determine whether an agreement constitutes an intent to engage in future negotiations or a binding contract, Tennessee courts "look to the language used in the writing and the surrounding circumstances known to both parties. *German v. Ford*, 300 S.W. 692, 702 (Tenn. Ct. App. 2009). "[A] finding that a contract is sufficiently definite is favored, so as to carry out the reasonable intentions of the parties. Thus, courts will seek to avoid finding that an agreement is too uncertain to be enforceable by considering the surrounding circumstances and the conduct of the parties." *Id.* at 706 (citing *In re Estate of Ohrt*, 516 N.W.2d 896, 901 (Iowa 1994)). *See also CNB Bancshares, Inc. v. Stonecastle Sec. LLC*, 2010 WL 1872719, *1 (E.D. Tenn. May 10, 2010) ("'[C]ourts will, if possible, so construe the agreement as to carry into effect the

reasonable intention of the parties, if that can be ascertained. The law leans against the destruction of contracts for uncertainty . . . .") (quoting *APCO Amusement Co. v. Wilkins Family Restaurants, Inc.*, 873 S.W.2d 523, 528 (Tenn. Ct. App. 1984)). It is not fatal to a contract that some terms are "left to be agreed upon." *Gurley*, 183 S.W.3d at 41(quoting Restatement (Second) of Contracts § 33 cmt. A (1981)); *see Id.* ("[P]arties may agree on some of the contractual terms, understanding them to be an agreement, and leave other contract terms to be made later. . . . [A] binding contract may be formed if the parties agree on the material terms, even though they leave open other provisions for later negotiation.") (quoting *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 766-67 (Tex. App. 2004) (internal citations omitted)). And regarding the circumstances surrounding the formation and performance of an alleged contract, "the actions of the parties may show conclusively that they have intended to conclude a binding agreement . . . . An offer which appears to be indefinite may be given precision by usage or trade or by course of dealing between the parties." *Id.* (quoting Restatement (Second) of Contracts § 33 cmt. A (1981)).

In *Gurley v. King*, the Tennessee Court of Appeals considered the enforceability of a letter agreement that provided: "This letter will serve to state that I will sign an exclusive management agreement with Cathy Gurley for a period of three years. . . . The details of the agreement will be worked out later but will basically follow the same arrangement currently in place with [a third party]." *Id.* at 32. The trial court granted summary judgment to the defendant on the basis that the letter constituted only an "agreement to agree" and was not enforceable because essential elements were never agreed to and the alleged arrangements between the parties were too indefinite and uncertain to be enforceable." *Id.* at 33. Reviewing that decision,

the Tennessee Court of Appeals found instructive a ruling by the Texas Court of Appeals in

*Kelley v. Rio Grande Computerland Group*:

> [A] letter of intent may be binding even though it refers to the drafting of a future, more formal agreement. [*John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 19 (Tex. App. 2000)] (citing *Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 746 (Tex. 1988)). As letters of intent may be binding, authorities are quick to warn parties of the risks involved with their use. *Id.* A party not wishing to be prematurely bound by a letter agreement is advised to include a provision clearly stating that the letter is nonbinding, as such negations of liability have been held to be effective. *Id.* (quoting E. Allen Farnsworth, *Farnsworth on Contracts* § 3.8(b), at 193 (1990)).

*Id.* at 36 (citing *Kelley*, 128 S,W,2d at 766-67). The court also cited a decision of the Court of

Appeals of Massachusetts:

> The most recent pronouncement in our cases on the subject of the enforceability of precontractual agreements place great reliance on the intention of the parties. [Citations omitted.] *McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629 (1999) ("The controlling fact is the intention of the parties"). See *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699 (2000), citing *David J.Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass.App.Ct. 237, 241, 392 N.E.2d 1066 (1979), for the proposition that a "party to [a] contract may be found to have entered [a] binding agreement if [that] party intended to be presently bound."
>
> . . . .
> Provision for the execution of a more formal document such as a purchase and sale agreement is not conclusive. Compare *Coan v. Holbrook*, 327 Mass. 221, 224, 97 N.E.2d 649 (1951), quoting from Restatement of Contracts § 26 (1932) ( "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof ...") with *Rosenfield v. United States Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323 (1935) ("Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled"). That the letter of intent looked to the parties' respective attorneys to prepare a purchase and sale agreement containing "such additional terms as are normal" to an asset purchase and which could be signed as

> late as the closing of the transaction, smacks more of formality and legal
> boilerplate than a call for further negotiation of material terms.

*Id.* at 36-38 (citing *Hunneman Real Estate v. Norwood Realty, Inc.*, 765 N.E.2d 800, 806-08 (2002)). The Court of Appeals reversed the trial court's grant of summary judgment, finding that the record "conclusively establish[ed] the existence of genuine questions of material fact precluding summary judgment . . . . including the significance of the details remaining to be formalized in writing after the letter was signed by both parties." *Id.* at 46-47.

### iii. Whether the Option's Valuation Method is Sufficiently Definite

The parties rely heavily upon the Tennessee Court of Appeals' holding in *Four Eights, LLC v. Salem*, 194 S.W.3d 484 (2005), in which the court considered the enforceability of an option contract which contained a price term of "fair market value" and provided that, "Fair Market Value must be determined by the Lessor and Lessee, negotiating in good faith, within thirty (30) days of Lessee [sic] notice to Lessor of the election to purchase the Premises." *Id.* at 486. The court found that by leaving the definition of "fair market value" up to future determination, the parties "basically made an 'agreement to agree' to something in the future, and such agreements have generally been held unenforceable . . . ." *Id.* Citing a number of cases from Tennessee and other jurisdictions, the court found that the option was not sufficiently definite regarding price. *Id.* (citing *Walker*, 1986 WL 11250, \*2 (declining to enforce a writing that "provides no standard for ascertaining the price or any other conditions of the sale")) (quoting *King v. Dalton Motors, Inc.*, 109 N.W.2d 51 (Minn. 1961) (finding that an agreement under which a purchaser had an option to buy property "at a price to be negotiated and to be agreeable between the parties at the time of the sale" was fatally defective as too vague,

-10-

indefinite, and uncertain)) (other citations omitted). The parties also point the Court to *Walker*, in which the court found unenforceable an option contract to purchase property that "prescribed no method of determining what property, if any, Walker may purchase, at what time or at what price he could purchase, nor was there an obligation that he purchase." *Walker*, 1986 WL 11250, *2.

Finally, in *Kyle v. J.A. Fulmer Trust*, the Tennessee Court of Appeals addressed an analogous situation to the present issue before the Court. No. W2008-0220-COA-R3-CV, 2008 WL 5156306 (Tenn. Ct. App. Dec. 9, 2008). The Court, when considering summary judgment, found that the contract did not contain a specific price term, yet it is fully enforceable as it contained a "specific method of determining the price…[which] does not call for independent negotiations between the parties." *Id* at *6. The contractual language at issue in *Kyle* is as follows:

> Should the Lessor and the Lessees fail to agree upon such consideration, the Lessor and the Lessees shall each name one arbiter who shall in turn choose one umpire; the three thus named shall act with promptness; the decision of any two as to the proper consideration for the purchase of said demised premises shall be binding upon all the parties hereto."

*Id* at *2. As a point of reference, contrast the language of the Option that is the subject of the present litigation:

> Upon exercise of the Option, FANB agrees to sell the Owned Property and either sublet the Leased Property or permit Conley to assume the Parking Lot Lease in accordance with the terms of the parking Lot Lease and this Option, for a purchase price which represents the fair market value of the Owned Property, as mutually agreed upon by the parties or as based upon an MAI appraisal, conducted by an appraiser chosen by the parties.

Jurisprudentially, a motion for summary judgment requires the Court to draw all inferences in favor of the non-moving party. *Hamilton,* 522 F.3d at 627. "Summary judgment is

-11-

proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to succeed on its Motion, Universal must meet the burden of summary judgment by showing that the contract is sufficiently definite to obligate the parties to fulfill its terms. As a matter of law, the Plaintiff's Motion for Summary Judgment must fail as the Plaintiff has not met the requisite burden showing that the Option is enforceable. The language of the contract in *Kyle* is drastically different from the language in the Option. In *Kyle,* parties were specifically directed to a set course of dispute resolution in the event of a disagreement; the Option, on the other hand, is unclear whether the MAI appraisal is obligatory or elective. It is unclear how the Option would resolve disputes regarding the identity of the appraiser, or whether they would be bound to the appraiser's valuation. Contrasted with *Kyle,* and the above-cited law governing vagueness, this Court cannot find that the Plaintiff is entitled to judgment as a matter of law because the contract is arguably ambiguous on its face. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**

### VI. Motion to Dismiss

The Court will now consider the Defendant's Motion to Dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 6.] For the reasons that will follow, Defendants Motion to Dismiss [Doc. 6.] will be **DENIED**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.

*DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009). To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim.

Typically, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, a court may consider any documents attached to a motion to dismiss to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim, and the Court may consider exhibits attached to the complaint. *Id.* at 89. In this case, the Court will consider the Complaint itself, Defendant's Motion, Plaintiffs Response and exhibits referred to in the Complaint without converting this Motion to Dismiss to a motion for summary judgment.

Though the Defendant is correct that the language of the Option is arguably ambiguous, ambiguity alone does not preclude the Plaintiff from recovery. Plaintiff alleges that the Defendant violated the implied covenant of good faith and fair dealing. The Plaintiff argues that "Regions' refusal to participate in the selection of an appraiser should not be construed as a lack of a practical method for determining the Purchase Price but as a breach of Region's implied duty of good faith and fair dealing."

1. **Fair Dealing**

In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). In Tennessee, parties to a contract "owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Weese v. Wyndham Vacation Resorts,* No.: 3:07-CV-433, 2009 U.S. Dist. LEXIS 55328, at *13 (E.D. Tenn. June 30, 2009); see also *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.,* 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). Every contract carries with it the implied covenant of good faith and fair dealing. *Goot v. Metro. Gov't of Nashville and Davidson County,* No. M2003-02013-COA-R3-CV, 2005 Tenn. App. LEXIS 708, at *22 (Tenn. Ct. App. Nov. 9, 2005). Tennessee [*13] courts have enforced the covenant in furtherance of two objectives: 1)Honoring the contracting parties' reasonable expectations; and, 2) Protecting "the rights of the parties to receive the benefits of the agreement they entered into." *Barnes & Robinson Co.,* 195 S.W.3d at 642 (citations omitted). The implied covenant does not, however, "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Goot,* 2005 Tenn. App. LEXIS 708, at *7 (Tenn. Ct. App. Nov. 9, 2005). Instead, the implied covenant "'may be an element or circumstance of . . . breaches of contracts.'" *Weese,* 2009 U.S. Dist. LEXIS 55328, at *14 (quoting *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)).

In other words, the implied covenant of good faith and fair dealing is not a stand-alone claim; rather, it is part of an overall breach of contract claim. *Lyons v. Farmers Ins. Exch*., 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). While every contract contains an implied covenant of

-14-

Case 3:11-cv-00538 Document 18 Filed 09/21/12 Page 14 of 17 PageID #: 376

good faith and fair dealing, *Goot v. Metro. Gov't of Nashville & Davidson County*, No. M2003-02013-COA-R3-CV, 2005 Tenn. App. LEXIS 708, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005) (citations omitted), there must be a contract to contain the covenant. In this case, the Defendant alleges a breach of contract, which is a necessary requisite for a claim for a breach of good faith and fair dealing. "[A]bsent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing." Envoy Corp. v. Quintiles Transnat'l Corp., No. 3:03cv0539, 2007 U.S. Dist. LEXIS 54429, at *8 (M.D. Tenn. July 26, 2007).

A breach of the covenant of good faith and fair dealing is breached when a party to the contract exercises discretion authorized in a contract in an unreasonable way. *Jones Express, Inc. v. Watson*, 2012 U.S. Dist. LEXIS 67416 (M.D. Tenn. May 15, 2012). To illustrate this point, the court in *Jones Express* adopted the reasoning of the Pennsylvania Court of Common Pleas in *Philadelphia Plaza--Phase II v. Bank of Am., N.A.*, No. 3725, 2002 Phila. Ct. Com. Pl. LEXIS 14, 2002 WL 1472337 Pa. Ct. Com. Pl. Jun. 21, 2002). In *Philadelphia Plaza*, the court found that the defendant was in breach of the covenant of good faith and fair dealing. The defendant bank attempted to enforce a provision in the parties' loan agreement that required the plaintiff (as borrower) to maintain numerous forms of insurance as well as "[s]uch other insurance as Bank may require. *Id.* at *1. If the plaintiff did not maintain all of the insurance that the bank requested, the agreement gave the Defendant the right to purchase the insurance and then demand reimbursement. *Id.* After the terrorist attacks on September 11, the bank demanded the plaintiff to secure terrorism insurance that would cover full value of the property in the event of an terrorist attack. *Id.*

The Court of Common Pleas found that the defendant was abusing its discretion in an unreasonable manner, violating the covenant of good faith and fair dealing. *Id.*at *6. The cost of terrorism insurance was too great to be commercially viable and the defendant was abusing its discretion. Similarly, in the instant case, the Plaintiff alleges that the Defendant abused its discretion in the contract by refusing to negotiate in good faith concerning the value of the Lot— or in choosing an appraiser. When reviewing Regions letter in response to Universal's attempt to exercise the Option, referenced in the Complaint and Plaintiff's Response in Opposition, the Court finds that Defendant's Motion to Dismiss is premature as Plaintiff has raised an issue that requires further proceedings. Since there is no evidence of an attempt to negotiate in good faith, the Court cannot, as a matter of law, dismiss this action. Particularly persuasive is Regions own letter sent to the Plaintiff, via counsel, that did not attempt to negotiate but instead asserted that "…we do not believe that [Universal] has a basis for judicial enforcement relation to the Option…" [Doc. 16 Exb D.]

The Court finds that the Plaintiff has stated a claim that, if taken to be true for the purposes of a 12(b)(6) motion, is a breach of the covenant of good faith and fair dealing. If the facts show that Defendant did not make a good faith effort to conform to the terms of the Option, and instead abused its discretion therein unreasonably, then the Defendant would be in breach of the common law covenant.[1] Accordingly, there are still material issues that cannot be decided

---

[1] The Defendant argues that the Plaintiff never attempted to exercise the Option; Defendant's argument is erroneous. The Option did not require the Plaintiff to suggest a price term or offer an appraiser. Basic contract law makes clear that acceptance is a "final and unqualified expression of assent to the terms of an offer." G.H. Treitel, The Law of Contract, 10th edn, p.16. The essential requirement is that there be evidence that the parties had each, from an objective perspective, engaged in conduct manifesting their assent to the terms of the deal. Here, sending a letter to the Defendant which reads, " [Universal…exercises its rights under the January 4, 1995 Option to Purchase Real Property and Sublease or Assume Lease 'Option' between [Regions and Universal]…You should contact the writer upon receipt of this notice so that we can agree upon fair market value of the Owned Property." [Doc. 1 Exb. A]. The Plaintiff was, clearly, manifesting its intent to exercise the option. Regions failed to respond to Universal's communication, though Regions admitted to receiving the letter. Regions did not respond, in fact, until

-16-

Case 3:11-cv-00538 Document 18 Filed 09/21/12 Page 16 of 17 PageID #: 378

as a matter of law at the motion to dismiss stage. The Defendant's Motion to Dismiss is, therefore, **DENIED.**

## VII. Defendant's Rule 56(D) Request

Defendant requests that, in the event the Court denies its Motion to Dismiss, the Court grant the Defendant additional time for discovery in order to properly respond to the Plaintiff's Summary Judgment Motion. As the Court has denied the Plaintiff's Summary Judgment Motion, there is no need to engage in further discovery related to that motion. Accordingly, Defendant's Request for Additional Discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, will be **DENIED AS MOOT.**

## VIII. Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss the Complaint for failure to state a claim [Doc. 6] will be **DENIED**, Defendants Motion Rule 56 request [Doc. 16.] will be **DENIED AS MOOT,** and Plaintiff's Motion for Summary Judgment [Doc. 11.] will be **DENIED**. Furthermore, the Court will issue a forthcoming **Order compelling the parties to mediation** regarding this matter.

        **IT IS SO ORDERED.**

                                  **ENTER:**

                                    s/ Thomas W. Phillips
                                    United States District Judge

---

legal threats were issued by Universal. The aforementioned is not evidence of Regions' intent to comply with the contract; rather, it is evidence of a party who refused to comply with the terms. Furthermore; Regions' central argument is unenforceability. Defendant's attempt to convince the Court that it intended to comply with the contract but could not do so due to Plaintiff's failure to stipulate a price is not well taken.